JAMES F. DARNALL, Respondent, v. HOMER A. MOREHOUSE and others, Appellants.

If commercial paper, when received upon the sale of property, by the vendor at the risk of the vendee as to its payment, or as a security upon a pre-existing debt, becomes valueless through the *laches* of the party

receiving it, the loss must be borne by him and he cannot recover the price of his goods or his debt.

The plaintiff, on the 28th of October, while receiving from the defendant at B., in this State, drafts in payment for cattle sold to him, stated that he lived at G., in Indiana, that he wanted to go thither on the next train and that he had just about time to get to it; and the defendant thereupon requested the teller of the drawer of the drafts "to fix him (the plaintiff) out, as he wanted to go by the train"; and the plaintiff took the drafts with him to G., whence they were forwarded to New York, were not presented until the 4th of November, and payment was then refused.—*Held*, the defendant was discharged and it was error to submit to the jury the question, whether, by this conversation, the defendant had consented to the draft being taken to G., and thereby excused the plaintiff's *laches*.

Where the defendant testified that, after cattle had been sold and delivered to him by the plaintiff, he went with the plaintiff to a banker and there paid the purchase price to the bank teller, by whom the plaintiff being asked how he would have it, replied "in two drafts," specifying the amounts, which were made out and delivered to him after being indorsed at his request by the defendant; and the plaintiff did not testify that any thing was said between him and the defendant as to drafts, but that, after entering the bank, the defendant spoke to the teller, who immediately commenced to fill up a draft, and he, the plaintiff, told him to make two drafts, specifying amounts. The question as to whether or not the plaintiff elected to receive the drafts in payment for the cattle should have been left to the jury. GROVER, J.

(Argued February 15th; decided February 21st, 1871.)

APPEAL from a judgment entered upon the decision of the General Term of the Superior Court of Buffalo, on a case containing exceptions directed to be heard in the first instance at a General Term.

On the 28th of October, 1867, the defendant purchased of W. Johnson a herd of cattle, supposing Johnson to be the principal. He was, however, in fact, the agent of the plaintiff and others.

The sale of the cattle was for cash on delivery. The price was agreed upon and the cattle were weighed and delivered. About two hours after the delivery, the defendant Homer A. Morehouse, took Mr. Johnson, who sold the cattle as the agent of the plaintiff, to the banking office of Mr. Shuttleworth to pay the purchase price of the cattle. Nothing had been said

prior to this relative to the manner of paying for the cattle. Mr. Johnson at the time of the sale of the plaintiff's cattle sold with them some cattle belonging to Messrs. Smith and Steele. Johnson testified, that when the parties went into the banking office, defendant instructed the teller to deliver to him, Johnson, a draft and Mr. Johnson told him he would have the amount in two drafts, one covering the amount going to the plaintiff, and the other for the amount going to the Messrs. Smith and Steele. When the drafts were delivered to Mr. Johnson he told the defendant he would have to indorse them, and he did so.

The defendant, Morehouse, testified, that he and Johnson went into to the office of Shuttleworth; figured up the amount ($4,926.30), that Burke (Shuttleworth's teller), asked Johnson how he would have it; that Johnson said he would have it in drafts to order of W. Johnson, one for $2,100, and the other for the balance; that Burke handed him the drafts on Fisk & Hatch, New York, for the amounts, and he, Johnson, said to Morehouse, "I want you to put your name on these, and that Morehouse did put his name on them; that, at the same time Morehouse gave to Burke a draft on his partner, the defendant J. S. Miller, for $4,935.40, the price of the whole drove of cattle, with $9.10 exchange, which draft was paid. It also appeared, at the time Johnson received these drafts of Shuttleworth, on the 28th of October, 1867, Shuttleworth was in good credit, and that his drafts were paid by Fisk & Hatch up to and including the 2d day of November following, and that on such 2d day of November, Shuttleworth's balance with Fisk and Hatch amounted to more than $20,000; that there were two daily mails from Buffalo to New York, one leaving at 2.30, P. M., and the other at 6, P. M., the 2.30 reaching New York at 7, A. M., the next day, and 6, P. M., train, at 1, P. M., the next day. The drafts instead of being sent at once to New York were carried by Johnson to his residence, Greencastle, Indiana, and were not presented to Fisk & Hatch until the 4th of November, when payment was refused.

The defendant's counsel requested the judge to submit to the jury the question, whether the plaintiff had elected to receive the drafts in payment for the cattle. The court refused so to do and the defendant's counsel excepted.

The court instructed the jury that the only question was, whether the defendant consented that the plaintiff should take the draft with him to Greencastle. The evidence upon this point is fully stated in the opinion of the court. To this instruction the defendant's counsel excepted. The jury found that such consent had been given, and found a verdict in favor of the plaintiff. The court then ordered the exceptions to be heard at the General Term in the first instance, and judgment upon the verdict suspended in the meantime.

*Nelson Smith,* for the appellants, insisted that the plaintiff was guilty of laches, and could not recover without showing that the defendants have not been injured. (*Little* v. *Phœnix Bank,* 2 Hill, 425 ; 7 Hill, 359 ; *Bradford* v. *Fox,* 39 Barb., 203 ; *Schofield* v. *Bayard,* 3 id., 488 ; *Allen* v. *Suydam,* 30 Wend., 321.

*John Ganson,* for respondent, insisted that there was no evidence showing that the plaintiff had received drafts as payment. (*Turner* v. *The Bank of Fox Lake,* 3 Keyes, 425 ; *Vail* v. *Foster,* 4 Com., 312; *Burkhalter* v. *The Second National Bank,* 42 N. Y., 538 ; *Porter* v. *Talcott,* 1 Cow., 359, 383; *Johnson* v. *Weed,* 9 Johns., 310; *Monroe* v. *Hoff,* 5 Den., 360; *Cole* v. *Sackett,* 1 Hill, 516 ; *Waydell* v. *Suer,* 5 Hill, 448; *Elwood* v. *Diefendorf,* 5 Bar., 398.)

GROVER, J. The exception to the refusal of the court to nonsuit the plaintiff was well taken. One ground upon which this motion was made, was that the plaintiff was guilty of laches in presenting the draft. It is clear that his right of recovery was barred for that reason, unless such laches was excused by the agreement of the defendant Morehouse that the draft might be taken to Indiana and forwarded from thence for collection. The draft was drawn, indorsed by

Morehouse, and delivered to the plaintiff, at Buffalo, on the 28th of October, upon Messrs. Fisk & Hatch, New York, payable at sight. It was admitted that there were, at the time, two daily mails between Buffalo and New York, departing from Buffalo at different hours, so that, had the draft been forwarded by the earlier mail leaving Buffalo on the 29th of October, it would have arrived in New York in season for presentation on the 30th, and if by the latter, it would so have arrived in time for presentation on the 31st. The draft was not presented for payment until November 4, at which time the drawees had stopped paying the drafts of the drawer, having paid all that were presented to the close of business on the 2d of November, at which time they had a large amount of the funds of the drawer in their hands, having paid a large amount of the drafts of the drawer after the receipt of the draft in question by the plaintiff at Buffalo and the close of business on the 2d of November. The proof shows that the draft in question, instead of being forwarded for presentation from Buffalo with due diligence, was taken by the plaintiff's agent to Indiana, and from thence sent to New York. If the plaintiff did this pursuant to an agreement with the defendant Morehouse, the latter could not impute to him laches in consequence thereof, although prior parties who had not so agreed might have been thereby discharged. The question, therefore, is, whether there was sufficient evidence of any such agreement or consent by Morehouse as to warrant the submission of that question to the jury. All the evidence tending to show any such agreement or consent by Morehouse was the testimony of the plaintiff's agent, who transacted the business for him, and who was believed by Morehouse to be the principal therein, that he told Morehouse that he lived in Greencastle, in the State of Indiana, and that he wanted to get out on the next Lake Shore train, and that he had just about time to get to it, and that Morehouse told Bürke, the teller of the drawee, who filled up the draft, to fix him out, as he wanted to go to the train. This testimony, taken to be true, as it must be for the

purposes of the motion, fails to show that Morehouse knew he was going to take the draft to Indiana; much less his consent that he might so take it at his risk of the money being lost by the delay thereby occasioned. Not one word is said by the agent to Morehouse of any design so to take it, or of what he was going to do with it, or by Morehouse to him as to what he might or should do with it. The most that can fairly be inferred from the testimony is that Morehouse thought that the agent might take the draft to Indiana. If he so thought, or even knew that he intended to take it there, and that if he did so without his consent he would be thereby discharged, it would not excuse the laches in presenting the draft. Morehouse owed no duty to give information to the agent of what it was necessary for him to do to preserve his liability as indorser upon the draft or that of the drawer. Consequently his failing to inform him of. what it was necessary for him to do, to charge him or the other parties, was not fraudulent, and he incurred no liability thereby. There was not a particle of evidence that the agent was induced to take the draft to Indiana, by anything said or done by Morehouse. By his so doing, the presentation of the draft was delayed for four or five days beyond the time when it would have been presented in the exercise of legal diligence, by reason of which the money was lost. That when commercial paper received by the vendor upon the sale of property at the risk of the purchaser as to its payment, or as security upon a pre-existing debt, is lost through the laches of the party receiving it, the loss must be borne by him, is a proposition well settled. This disposes of the case.

But as another question raised by an exception taken upon trial and discussed by counsel upon the argument may arise upon a retrial, it may be well briefly to consider it. That is, whether the judge ought not to have submitted to the jury the question whether the defendant, Morehouse, did not provide Shuttleworth, the banker, with funds, with which he (Shuttleworth) undertook to pay the plaintiff's agent for the cattle for him, and whether Shuttleworth did not pay the amount to the

agent in such funds as the agent elected to receive, and whether the draft of Shuttleworth was not received by the agent of plaintiff, because he preferred that to currency, with instructions that, if they found such to have been the transaction, the draft operated as payment for the cattle, and precluded a recovery of the price by the plaintiff. There was but little conflict in the testimony. The cattle were sold by weight, to be paid for upon delivery. Nothing appears to have been said as to any particular medium of payment. The price was, therefore, payable in cash. Possession, before payment, was delivered to Morehouse, to enable him to take them to the Erie stock pens for shipment; after doing which, he promised to return and pay for the cattle. Morehouse returned, and the parties went into Shuttleworth's banking house, where they figured up the amount of the cattle, and, as Morehouse testifies, Burke, Shuttleworth's teller, asked Johnson, plaintiff's agent, how he would have it; who replied he would have it in two drafts, specifying the amount of one, and the balance in the other, payable to his own order, which was thereupon drawn and delivered to him; and that he then asked him to indorse them, and he put his name on them. Morehouse further testifies that he had frequently paid parties of whom he purchased cattle through Shuttleworth's bank, and that such parties had their choice between drafts and currency. This evidence, taken in connection with the known course of business by bankers, in making payments for parties furnishing them with funds for that purpose, tends strongly to show that Johnson received the drafts in payment for the cattle, and that he required the indorsement of Morehouse merely as surety for the drawer, which, as such, he was content to give. Johnson does not testify that anything was said between him and Morehouse about his taking a draft, or as to how he was to be paid; that after they had figured up the amount of the cattle, Morehouse stepped up to the teller and said something to him; that thereupon the teller commenced filling up a draft for the whole amount, and that he then told him he would have it in two drafts, telling him how they

should be drawn; and that they were drawn and handed to him or Morehouse, and he asked Morehouse to indorse them, which he did. This presented a question, from all the evidence, whether Johnson received the draft from Shuttleworth in payment for the cattle sold Morehouse, in the usual way of payment by bankers of the checks of their depositors, or whether Morehouse purchased the drafts of Shuttleworth and gave them to Johnson for the price of the cattle. If the former, it was a payment for the cattle; if the latter, it was not, as the indorsement of the drafts by Morehouse showed that they were not received by Johnson as satisfaction, unless they were actually paid. (*Monroe* v. *Staff*, 5 Denio, 360.)

The judgment appealed from must be reversed, and a new trial ordered, costs to abide event.

All the judges concurring, judgment reversed and new trial ordered.