Freedman, J. (dissenting).
The plaintiff sued as the surviving partner of Isaac H. Smith & Son, to recover a balance due on an account for goods sold and delivered to the defendant by the said firm.
The defendant rested his defense on the statute of limitations.
The referee held that the account between the parties was a mutual, open, and running account, and that the last item proved in the account was the receipt by plaintiffs’ firm, within six years of the commencement of the action, of the proceeds of certain notes made by third parties and transferred by the defendant, with his endorsement thereon, to said firm, on account of his indebtedness. He accordingly gave judgment for the plaintiff.
The defendant appealed.
The referee clearly erred in treating the account between the parties as a mutual, open, and current account within the meaning of section 95 of the Code.
The provision of the Revised Statutes of 1830 (2 R. S. 296, §23), was “that in all actions of assumpsit, •debt, or account, brought to recover any balance due upon an open, mutual, and current account, the cause *504 of action shall be deemed to have accrued from the time of the last item proved in such account.”
But section 95 of the Code contains the additional words, where there have been reciprocal demands between the parties.” This means cross-demands, matters of set-off, or a counterclaim ; something upon which the other party could sustain an action (Peck v. the N. Y. and Liverpool U. S. Mail Steamship Co., 5 Bosw. 226).
The account before the referee, though a long one, consisted of items of charge to the defendant, and nothing but credits for payments made and for empty barrels returned by the defendant. This not being sufficient, plaintiffs’ claim was barred by the statute, unless taken out of it in some other way.
It is insisted that this was done by a payment of a portion of plaintiffs’ demand within the six years, and that the evidence and the legal effect of the findings of the referee upon this point are sufficient to sustain the judgment upon this theory.
Section 110 of the Code, which requires that an acknowledgment or new promise shall be in writing, did not change the nature or effect of a payment of principal, or interest, or part thereof. On the contrary, it recognized and continued the rule as established by the decisions of the courts. Such rule depends wholly upon the reason of those decisions. The reason of the rule that a part payment made on account of a claim has the effect to take a, case out of the operation of the statute of limitations, or rather to enlarge the time during which an action may be brought, is that such payment in part is an ackuowledgment by the debtor of his liability for the whole demand. From this acknowledgment a new promise on his part to pay the residue is implied. The undertaking of the debtor, as to the unpaid part of the debt, is thus, by a legal presumption, renewed and made to date from the time of the part payment (Harper v. Fairley, 53 N. Y. 442).
*505 The undisputed facts in this case are, and the referee has found:
That on April 10, 1868, the defendant was indebted to plaintiffs’ firm in the sum of two thousand five hundred and one dollars and fifty-three cents on a running and open account, and that being thus indebted, the defendant, on April 14, 1868, endorsed and delivered to said firm two notes for five hundred dollars each, made by Betts & Gay, dated April 6, 1868, and payayable in two and five months, respectively, with interest from their date. The notes were secured by a chattel mortgage given by the makers thereof to the defendant, who assigned and delivered the same to plaintiffs’ firm, together with the notes. Upon the receipt of the notes they were entered in the books of plaintiffs’ firm by charging them to bills receivable, and crediting them to defendants’ account. The notes were paid to plaintiffs’ firm as they matured, and the sums collected for principal thereon were carried to the credit of bills receivable, viz.: five hundred dollars on June 9, 1868, and five hundred dollars on September 17, 1868. The action was commenced June 5, 1874.
Upon this state of facts the first question that presents itself is, whether the part payment is to date from the time of the delivery of the notes to plaintiffs’ firm, or from the time of their collection.
As a general rule, if a vendor of goods receive from the purchaser the note of a third person, at the time of the sale (such note not being forged, and there being no fraud or misrepresentation on the part of the purchaser as to the solvency of the maker), it is deemed to have been accepted by the vendor in payment and satisfaction, unless the contrary be expressly proved (Whitbeck v. Van Ness, 11 Johns. R. 409; Breed v. Cook, 15 Johns. R. 341).
The contrary may be shown by a contract of guaranty (Monroe v. Hoff, 5 Denio, 360), or a contract of *506 endorsement (Darnall v. Morehouse, 45 N. Y. 64; Fowler v. Clearwater, 35 Barb. 143).
But when the note or bill of a third person is not taken at the time of the sale, but upon a precedent debt, the presumption is the other way, In such case the presumption is that the note or bill was not taken in payment and satisfaction of the precedent debt, and the onus of establishing that by the agreement of the parties it was so received, is upon the debtor (Noel v. Murray, 13 N. Y. 167; Gibson v. Tobey, 46 N. Y. 637).
In the case at bar the notes were given on account of a precedent debt. They were endorsed by the defendant, and, as additional security, a chatttel mortgage to secure their payment was also transferred. There is no proof of an agreement, or from which an agreement can be inferred, that they were taken in actual satisfaction of the debt pro tanto. Under these circumstances the payment made by the defendant is to date from the time of the maturity of the notes, and not from the time of their delivery to plaintiff’s firm. The second note matured September 19, 1868, within six years of the commencement of the action, and as the payment represented by it was not directly appropriated to a specific item in the account between the parties, in which case the statute would have been left to its operation as to the rest of the items, its effect was to save the whole balance of the account. Where the debtor knows that there exists against him a general account of items, and he designedly pays or furnishes something to lessen the demand on such general account without discrimination, and at that time does not deny his liability for the other previous items, the law reaches an implication of his acknowledgment of the whole account (Peck v. The N. Y. & Liverpool U. S. Mail Steamship Co., 5 Bosw. 226, 337).
It is claimed, however, by the appellant that before a *507 part payment can be construed into an acknowledgment by the debtor of his liability for the entire demand, so as to take the case out of the operation of the statute, it must appear that it was made by the debtor himself, or by his authorized agent.
As a general proposition this is true. The courts of this state have refused to follow the rule of decision made at one time in England, and to some extent in this country, under which, by a constructive equity, judicial refinements came near abolishing the statute of limitations altogether, and have reached the conclusion that the said statute is entitled to the same respect as other statutes. The doctrine that the time for bringing the action might be enlarged, or an outlawed demand revived, by a partial payment not made by the immediate debtor but by a joint contractor, an assignee or a trustee, is therefore no longer recognized in our courts (Roosevelt v. Marks, 6 Johns. Ch. 266, 292; Picket v. King, 34 Barb. 193; Bloodgood v. Bruen, 4 Seld. 362; Shoemaker v. Benedict, 1 Kern. 176, 185; Winchel v. Hicks, 18 N. Y. 558; Pickett v. Leonard, 34 Id. 175; McLaren v. McMartin, 36 Id. 88).
But at the same time the principle has been rigidly maintained, and it is still in force, that a recognition or ratification of the agency of the person making the payment will bind the debtor.
Thus in Winchel v. Hicks (18 N. Y. 558) it has-been held that if a surety request the principal to make a payment of the interest on the obligation, and it is accordingly made and endorsed, the act is to be regarded as the acknowledgment of both parties.
In Munroe v. Potter (22 How. 49; S. C., 34 Barb. 358), Morgan, J., held that the surety on an overdue-note, who, with knowledge of the facts, took money of the principal to the holder of the note, and had it endorsed thereon as so much paid by the principal, was bound by the acknowledgment which the act indicated,. *508 and which he participated in and approved of at the time it was done.
In Huntington v. Ballou (2 Lans. 120) the defendant was an accommodation indorser of a note. Some time after the maturity of the note, the maker, without defendant’s authority or knowledge, paid to plaintiff the interest due thereon, and took a receipt reciting that the same had been received from and paid by the defendant. The plaintiff showed the receipt to the defendant, and the latter thereupon examined it, and expressed his approval. It was held that by such act the defendant adopted the payment as his own, and became entitled, as between him and the other parties liable on the note, to the benefits secured to Mm by the receipt; that, as to the plaintiff he assumed the legal liabilities consequent upon such payment to the same extent as if it had been actually made by him ; and that for these reasons the payment took the case out of the operation of the statute of limitations as to such defendant.
The case of the First national Bank of Utica v. Ballou (49 N. Y. 155), presented substantially the same state of facts as the case last referred to, and the decision was precisely the same. In delivering the unanimous opinion of the court of appeals, Bapallo, J., says: “ Although Shearman (the maker) was liable on the same notes, yet there was nothing in that circumstance to prevenían arrangement between the parties by which he should make this payment for and on behalf of the defendant; and if he did so, it was immaterial whose money he used. If the defendant had made the pay • ment in person, but Shearman had furnished the money, the payment would be none the less effectual as an admission of liability to bind the defendant. And if the defendant requested Shearman to make it in defendant’s name, the effect of the payment as a recognition of the defendant’s liability, would not be, dimin *509 islied by the fact that Shearman used his own money. The subsequent ratification of a payment made in that form is as effectual a recognition of liability as if the payment had been made by previous request.
In the present, case the notes were paid by the makers at maturity as contemplated by all the parties, and as the defendant by his contract of endorsement had undertaken to see that they should be paid. By handing them to plaintiff's firm in the manner he did, and failing to make a specific appropriaton of them, the defendant, as has already been shown, authorized the said firm to apply the payment, when received, in reduction of his general indebtedness. By this arrangement the defendant secured to himself the benefit of an extension of credit. The mortgage could not be enforced until default in the payment of the notes, and the taking of the notes suspended the right of action of plaintiff’s firm against the defendant to the extent of one thousand dollars until the maturity of the notes. Ho reason exists, therefore, why the defendant should not be held to have given implied authority, if not express, to the makers of the notes to pay the same to plaintiff’s firm at maturity.
The case of Harper v. Fairley (53 N. Y. 442), is clearly distinguishable. In that case the payment was made without the knowledge of the debtor several years after the collateral obligation had matured. It was for this reason that the court of appeals held that there could be no implied authority to make the payment “ at the time it was made.” It was conceded, however, that if certain facts sworn to by the plaintiff had been submitted to the jury and found in his favor, the express assent of the defendant to this payment would have been established, and that such assent would have been sufficient. These facts were controverted and were not submitted to the jury; and the instruction of the judge authorized the jury to render *510 a verdict for the plaintiff, even though they should disbelieve his evidence in that respect. It was for this reason that the said evidence could not avail the plaintiff on that appeal.
Moreover, the testimony in the case at bar, shows a ratification. Plaintiff’s bookkeeper testified that subsequently to the payment of the two notes he had a conversation with the defendant concerning them, and that in such conversation the defendant said that he had paid so much on those notes, that he owed more,, and would pay the balance. This testimony remained uncontradicted, and is therefore sufficient within all the authorities. Notwithstanding the statutory requirement that acknowledgments and new promises should be in writing, a part payment may be proved by the oral admission of the party (First National Bank of Utica v. Ballou, 49 N. Y. 155, 158). So where an act, though unauthorized, is apparently for the benefit of the principal, a very slight matter will serve to make out a ratification, and when it plainly appears that the principal at the time did mean to' ratify that which apparently was done for his benefit, the law does not compel the court to deny him the privilege. He must be taken to have considered for himself whether the act done was, on the whole, such as he approves and desires to be bound by (Commercial Bank of Buffalo v. Warren, 15 N. Y. 577).
The decison of the referee being right and sufficiently supported, notwithstanding the erroneous effect given to the account between the parties, the judgment appealed from should be affirmed, with costs.