ADRIAN H. MULLER, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondents.

By the amended charter of the city of New York of 1870 (§ 116, chap. 137, Laws of 1870), as amended in 1871 (§ 9, chap. 574, Laws of 1871), power to appoint appraisers to appraise the value of the property of the city was conferred upon the commissioners of the sinking fund, and it was in their discretion to determine when an appraisal was necessary.

The validity of the appointment of appraisers, or their right to compensation for services performed in good faith under the appointment, is not affected by the question as to whether an appraisal was proper or was directed from a proper motive.

The expense of an appraisal directed by the commissioners is not within the prohibition of the act of 1871 (§ 101, chap. 137, Laws of 1871), forbidding the incurring of any expense by any of the departments or officers thereof without an appropriation previously made covering it.

Where, therefore, appraisers were appointed by the commissioners under said charter to appraise the value of all the real estate of the city and

county, *held,* that so far as they rendered services for which the commissioners within their apparent authority might have occasion, the city corporation was liable.

The resolution adopted by the commissioners appointed plaintiff and others as appraisers and directed the clerk to notify them of their appointment, "the comptroller first making satisfactory arrangements with them as to their fees." The appointees agreed not to claim the usual compensation and the comptroller promised that the compensation should be satisfactory and liberal, and thereupon the appraisers were permitted and directed to proceed. *Held,* that this was a sufficient compliance with the condition of the resolution; that the agreement was, in substance, to pay the appraisers what their services should be reasonably worth, to be ascertained in case of disagreement by the proper tribunal in the usual manner; that whether the just inference from the language of the agreement and the circumstances was that it was intended to submit the whole subject of compensation to the comptroller was one of fact for the jury, and a refusal to submit it to them was error.

Plaintiff wrote a letter conceding that he did agree to leave the question of compensation entirely with the comptroller, and offering to leave it to the deputy (then acting) comptroller. This offer was not acted upon. *Held,* that plaintiff was not estopped by the letter, which was simply evidence upon the question as to what was the agreement.

*Muller* v. *The Mayor, etc.* (5 Hun, 282) reversed.

(Argued November 24, 1875; decided December 7, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, in favor of defendants, entered upon an order denying a motion for a new trial and directing a judgment upon order dismissing the complaint upon trial. (Reported below, 5 Hun, 282.)

This action was brought to recover compensation for services alleged to have been performed by plaintiff, as appraiser, in appraising the real estate belonging to the city and county of New York.

At a meeting of the commissioners of the sinking fund, held May 1st, 1871, the following resolution was adopted, viz.:

"*Resolved,* That Messrs. Anthony J. Bleecker, Adrian H. Muller and Courtlandt Palmer be appointed a committee, on behalf of this board, to ascertain and determine the value of all the real estate belonging to the city and county of New

York, and that the clerk be directed to notify them of such appointment, and the comptroller first making satisfactory arrangements with them as to their fees."

Plaintiff testified upon the trial as to his arrangement with the comptroller, as follows:

"I called upon the comptroller and I said: Mr. Comptroller, how about the commission here? Well, he said, Mr. Muller, you can't expect to charge one-quarter of one per cent commission in this case, it would come to about $260,000; well, I said, no, I can't do that; he said, I have had a conversation with Mr. Bleecker and I told Mr. Bleecker I would make it a compensation satisfactory, and would make it very liberal if you are a mind to do it on the same terms; I said, certainly, if Mr. Bleecker is willing I will do it, it will be satisfactory to me; he told me Mr. Bleecker would do it for satisfactory compensation; and he says, it will be a liberal compensation; I said, then I am satisfied with that arrangement, I suppose you won't take advantage of it; he said, no, we will give you a liberal compensation; I told him that was perfectly satisfactory to me."

A letter written by plaintiff to the commissioners was given in evidence by defendants' counsel, which contained this statement in reference to his services:

"I agreed to leave the question of compensation entirely with the comptroller; there I have left it, and am willing to leave it now in the hands of the deputy comptroller."

At the close of the evidence, defendants' counsel moved to dismiss the complaint upon the grounds: 1st. That the commissioners of the sinking fund had no power to order the appraisement. 2d. That the resolution provides that the compensation of the plaintiff shall be fixed by the comptroller prior to his employment, and there is no proof that such an arrangement was made by the comptroller. 3d. That there was no appropriation made for this expense.

The motion was granted, and plaintiff's counsel duly excepted. Exceptions were ordered to be heard at first instance at General Term.

*George H. Foster* for the appellant. The commissioners of the sinking fund had full power to employ plaintiff to make the appraisal. (Laws 1870, chap. 137, § 11 ; Laws 1871, chap. 574, § 9 ; *Thomas* v. *Richmond*, 12 Wall., 349 ; *Weston* v. *Syracuse*, 17 N. Y., 110 ; Dillon on Mun. Cor., § 372 ; *Reynolds* v. *Shreveport*, 13 La. Ann., 326 ; *McCracken* v. *San Francisco*, 16 Cal., 891 ; *People* v. *Flagg*, 17 N. Y., 584 ; *Har. Gas Co.* v. *Mayor*, 13 id., 309 ; *Peterson* v. *Mayor*, 17 id., 449 ; *People* v. *Van Nort*, 64 Barb., 205.)

*D. J. Dean* for the respondents. The commissioners were not authorized to employ plaintiff to make the appraisement directed by their resolution. (*Hodges* v. *Buffalo*, 2 Den., 110, 112 ; *Brady* v. *Mayor*, 2 Bosw., 173 ; 20 N. Y., 312 ; *Appleby* v. *Mayor*, 15 How., 428 ; *Suprs. Rens. Co.* v. *Bates*, 17 N. Y., 242 ; *Donovan* v. *Mayor*, 33 id., 293 ; *Smith* v. *Mayor*, 4 Sandf., 221 ; *Altemus* v. *Mayor*, 6 Duer, 446 ; *McSpeddon* v. *Mayor*, 7 Bosw., 601 ; *McDonald* v. *Mayor*, 4 Sup. Ct. R., 177 ; *Burns* v. *Mayor*, 5 id., 371 ; *Crown* v. *West Troy*, 43 Barb., 48.) The expense could not be incurred unless there had been an appropriation made to pay for it. (Laws 1870, chap. 137, § 101; Laws 1871, chap. 574, § 8; *Donovan* v. *Mayor*, 33 N. Y., 293.) Plaintiff cannot recover, because there was no arrangement between him and the comptroller fixing his compensation according to the resolution. (*Bow. Nat. Bk.* v. *Mayor*, 2 T. & C., 523; *Smith* v. *Brady*, 17 N. Y., 173 ; *Thomas* v. *Fleury*, 26 id., 26 ; *Butler* v. *Tucker*, 24 Wend., 447; *U. S.* v. *Robeson*, 9 Pet., 319.)

ALLEN, J. The amended charter of the city of New York, enacted in 1870 and amended in 1871, was paramount to and superseded the revised ordinances of 1844 and 1859, and all other ordinances before then enacted by the common council, so far as the provisions of the charter were inconsistent or in conflict with the ordinances. By the charter (Laws of 1870, chap. 137, § 115, vol. 1, p. 395 ; Laws of 1871, chap. 574, § 9, vol. 2, p. 1247), the commissioners of the sinking fund have power to sell or lease any city property, after public

advertisement and appraisal, *under the direction of said board*. By clear implication, the appraisal as well as the sale of city property is under the direction of the commissioners of the sinking fund who have full power to select the appraisers. This is included in the power conferred to direct as to the valuation and appraisal. It was for the commissioners to determine when an appraisal was necessary to enable them intelligently and properly to exercise their discretion and perform their duties in selling or offering for sale, or in leasing the city property. Whether a proper occasion existed for an appraisal, or whether made from a proper motive, cannot affect the validity of the appointment of appraisers, or impair their right to compensation for services performed in good faith. The appointees could safely act upon an employment within the apparent authority of the employers. They had the right to assume, that as to all the property which the commissioners had power to lease or sell, the employment was for some purpose connected with a lease or sale and so within the authority of the commissioners.

It is objected that the employment was illegal, and that the plaintiff cannot recover for services performed under it, because there was no appropriation to pay the expenses of the appraisal. Passing the questions as to the effect of this provision upon the contracts of the city officials, and whether the commissioners of the sinking fund are included within the terms of the act which forbids " any of the departments, or officers thereof" to incur any expense, unless an appropriation shall have been previously made covering it (chap. 137 of Laws of 1871, §§ 101, 137; *Detwiller* v. *Mayor, etc.*, 1 N. Y. Sup. Ct. R. [T. & C.], 657), this particular expense is not within the prohibition. For the expenses of an appraisal, and other charges connected with the sale or leasing of city property, there was no occasion for an appropriation, for the reason that such charges were directed to be paid from the proceeds of the sale or leasing, and it is only when, for some reason, they are not paid from that source, that the city is resorted to. The corporation is liable; but a fund being pro-

vided for the payment of the claim, a special appropriation was not necessary as a condition of incurring the expense. (*Baldwin* v. *City of Oswego*, 1 Abb. Ct. of Appeals Dec., 62.) The employment of the plaintiff and his associates was not *ultra vires*, and so far as they rendered services for which within the apparent authority of the commissioners they might have occasion, the plaintiff is entitled to recover unless the remaining objection is fatal to the action.

It is forcibly urged that the condition upon which the appointment of the plaintiff and his associates as appraisers was to take effect was not complied with, and so the services were rendered without a valid employment. The resolution appoints the persons named a committee on behalf of the board to ascertain and determine the value of the city property, and directs "that the clerk be directed to notify them of such appointment, and the comptroller first making satisfactory arrangements with them as to their fees." The clause quoted is ambiguous, but reading it as the counsel for the defendants would have us, as requiring the comptroller satisfactorily to arrange as to the *quantum* of compensation, rather than the time and manner of compensation, the condition was performed. The resolution does not in terms, or by necessary implication, call for an agreement for the payment and acceptance of a specific sum for the proposed service. It might not be practicable to fix upon an amount in advance which would be a just and reasonable return for the labor to be performed. The arrangement was to be satisfactory to the comptroller, and he came to an understanding and arrangement with the appraisers, which was satisfactory to him and under which he was content that the service should be performed. He was authorized to and did accept the agreement as a compliance with the condition of the appointment. The plaintiff and the other appointees agreed not to claim the usual per centages for the service, and to accept in lieu thereof compensation upon the basis of a *quantum meruit*, and the comptroller promised that the compensation should be satisfactory and liberal. The commissioners of the

sinking fund, of whom the comptroller was one, took this
view of the resolution and of the action of the comptroller,
for with knowledge of the facts they permitted and directed
the appraisers to proceed in their work, giving them day by
day instructions, and receiving the results of their labors.
In this suggestion I regard the knowledge of the comptroller
as the knowledge of his associates and all the commissioners
of the sinking fund. This was in substance an agreement to
pay the appraisers what their services should be reasonably
worth. There is nothing in the language of the parties or
in the terms of the arrangement that necessarily distinguishes
it from the case of an ordinary hiring, where the value of the
service is left to be settled after performance. In such a
case, if the parties should fail to agree upon the reasonable
worth of the service, it would be determined as other ques-
tions of fact, by a jury, and by the testimony of witnesses.
Neither party would be expected to abide by the judgment
of the other, and to pay or receive as the fair equivalent for
the labor performed the price fixed by one. The comptroller
said he would make the compensation satisfactory, and would
make it very liberal; and again : " We will give you a liberal
compensation." But this does not, to the exclusion of every
other inference, and of necessity, imply that the comptroller
was made the final arbiter of what would be a " satisfactory "
or " liberal " compensation. The same language used between
individuals would imply no more than that the employer
agreed to pay what should be the reasonable value of the
labor or other consideration of the promise, to be ascertained
in case of disagreement by the proper tribunal, and in the
usual manner. The most that the defendants can claim is
that the circumstances and the position and relation of the
parties, authorize the inference that more was intended than
was expressed by the words used, and that the just inference
is that it was intended to submit the whole question as to
compensation to the comptroller, the plaintiff and his asso-
ciates consenting to accept what the comptroller should
determine to be a liberal or satisfactory compensation. If

this be so, inasmuch as the conclusion is one to be arrived at, not from the language alone, but from that and all the circumstances proved, it was a question of fact for the jury and not of law for the court. It was not a question of interpretation, but of inference and of fact. (*Etting* v. *Bank of U. S.*, 11 Wheat., 59 ; *Burreda* v. *Silsbee*, 21 How. [U. S.] Rep., 146 ; *Morrell* v. *Frith*, 3 M. & W., 402 ; *Justice* v. *Lang*, 52 N. Y., 323 ; *Duffee* v. *Mason*, 8 Cow., 25 ; *Darnall* v. *Morehouse*, 45 N. Y., 64 ; *Gardner* v. *Clark*, 17 Barb., 538.)

The letter of the plaintiff of the 28th October, 1871, is a concession that he did agree to leave the question of compensation entirely with the comptroller, and that he was then willing to leave it with the then deputy comptroller, who was then, I think, acting comptroller, although that does not appear by the record. The offer to leave the question to the deputy was not acted upon by the commissioners, and is not, therefore, binding upon the plaintiff. The effect of the admission depends upon the determination of other questions not properly before us. The statement is consistent with an agreement that the individual then occupying the position of comptroller should determine the compensation, although this might be a very restricted interpretation of the language, and one that should not be given to it, and we do not propose to decide it. It is enough that the plaintiff is not estopped by the letter, and what was the agreement is an open question, the letter being legitimate evidence upon the subject. If the agreement should be found to be as claimed by the defendants, other questions will arise upon the acts of the comptroller in the premises as bearing upon the right of the plaintiff to recover $3,000 as the amount fixed by the comptroller, or upon a *quantum meruit*, by reason of the neglect of that officer to act at all. These matters are not presented by the record, and we do not pass upon them.

It was error to grant the nonsuit, and the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.