[Sac. No. 1863. In Bank.—December 8, 1911.]

M. P. STEIN, Respondent, v. LETITIA A. LEEMAN, Administratrix of the Estate of J. F. Archibald, Deceased, substituted in the place and stead of J. F. Archibald, Deceased, Appellant.

APPEAL—EFFECT OF REVERSAL — NEW TRIAL — IMPROPER MOTION FOR JUDGMENT.—Upon the reversal of an appeal from the judgment and from an order denying a new trial, there must be a new trial of all of the issues raised by the pleading; and a motion of the appellant for judgment in the superior court, without such new trial, was untenable, and was properly denied.

ID.—EFFECT OF DECISION UPON APPEAL—SPECIFIC PERFORMANCE OF HALF INTEREST IN TRACT—LEGAL RESULT OF OFFER—TENDER—CAUSE OF ACTION.—Where it was decided upon the former appeal, in an action for specific performance of a contract to pay at the rate of four dollars per acre for an undivided half interest in a tract of land containing 9680 acres, that the legal effect of an offer to pay at that rate was an offer of $38,720, and not merely one half thereof, as ruled by the superior court, it follows from such decision that the legal tender alleged in the complaint and proved on the second trial must have the same legal effect, that the complaint states a cause of action, and that the bringing of that sum into court on the second trial entitled the plaintiff to a specific performance.

ID.—UNTENABLE CLAIM OF ESTOPPEL.—Where the form of plaintiff's offer of payment was never objected to by defendant, and was sufficient to entitle plaintiff to recover upon payment of the correct amount, and defendant had the right to tender a deed and demand the correct amount, the failure to pay which would have put plaintiff in default, which he failed to do, the defendant cannot claim that

plaintiff was estopped merely because he insisted upon the first appeal that the decision of the superior court in favor of a rate of two dollars was the correct rate, from asserting upon a second trial the rate and sum determined upon such appeal to be the true rate and sum to be paid by him.

ID.—RULES AS TO EQUITABLE ESTOPPEL — CHANGE OF POSITION.—An equitable estoppel is not raised by the conduct of one party in the course of a lawsuit, unless, by reason thereof, the other party has done some act or has been placed in a position that would render it unjust to him to allow the first party to change his own position in regard to the matter. Where no wrong would be done to the court or to the other parties to a cause by permitting a change of position, a change should on principle, and will in fact, be allowed.

ID.—ESSENTIALS OF ESTOPPEL—INJURY TO PERSON ESTOPPED—IGNORANCE OF RIGHTS.—In order to constitute an estoppel the condition brought about by the conduct of the party to be estopped must be such that the other party will be injured or placed in a worse position, if the first is allowed to pursue another course, or assert the fact to the contrary to his first statement, and the party claiming the estoppel must himself have ignorance of the truth of the matter or the extent of his rights concerning the same.

ID.—RIGHT OF PARTY SUING UPON CONTRACT TO CHANGE CONSTRUCTION.— A party suing upon a contract has a right to claim a construction more favorable to him than it will bear, and if he is refused relief under that construction, and the other party will not be prejudiced by a change of plaintiff's claim, the plaintiff will still be at liberty to contend for that which is his lawful right.

ID.—GAIN OR LOSS NOT AFFECTED BY CHANGE OF CLAIM FOR SPECIFIC PERFORMANCE—ELEMENTS OF ESTOPPEL NOT INVOLVED.—Since the plaintiff gained nothing by his claim for specific performance at the rate of two dollars per acre for the undivided half interest and the defendant lost nothing by the assertion of that unsuccessful claim; but his situation is the same on the new trial as it was prior to the first judgment, and he received on the new trial all that he could claim under the contract, as construed on the former appeal, the case lacks all the elements of an estoppel of plaintiff to make the true payment under the contract.

ID.—EVASION BY VENDOR OF PURCHASER'S OFFER OF PERFORMANCE— PROPER OFFER AT RESIDENCE.—Where the vendor endeavored to evade the purchaser's offer of performance within the time limited by the contract, for the purpose of preventing a due offer of performance by absenting himself, the offer may, under section 1489 of the Civil Code, be made at his place of residence; and where it was so made within proper time, prior to the commencement of the action, the tender was complete, and sufficient to sustain the action.

ID.—OPTION TO PURCHASE — CONSIDERATION — FARMING CONTRACT.— Though the contract between the parties contained an option to

purchase, yet such option was not without consideration, where it appears from the terms of the written instrument between them, that they agreed to farm the land upon shares, and to bear equally all the expenses incurred thereby, in consideration whereof the owners of the land agreed to sell the same to plaintiff on specified terms within three years. The agreement of plaintiff to assist in the farming operations, was a sufficient consideration for the option.

ID.—CONSIDERATION FOR EXTENSION OF TIME—DUTY OF OWNER TO ACCOUNT—BENEFIT TO OWNER.—Where the plaintiff had expended about five thousand dollars in the farming operations, and the owner had received and retained all the income therefrom, and the transactions required a settlement between them before it could be ascertained how much the plaintiff should pay for the purchase of the land, and the original contract was about to expire, and to accommodate the owner, who was not then ready for a settlement, it was agreed to extend the time of performance for two years, the benefit to the owner was a sufficient consideration for such extension of time.

ID.—PLAINTIFF NOT REQUIRED TO PAY INTEREST.—The plaintiff cannot be required to pay interest on the agreed purchase money from the date of his tender.

APPEAL from a judgment of the Superior Court of Madera County and from an order denying a new trial. J. J. Trabucco, Judge presiding.

The facts are stated in the opinion of the court. Further facts are stated in the opinion upon the former appeal, reported in 151 Cal. 220, [90 Pac. 536].

Robert L. Hargrove, and Frank H. Farrar, for Appellant.

Nicol & Orr, Bert Schlesinger, and Francis A. Fee, for Respondent.

THE COURT.—A re-examination of the questions involved in this case convinces the court of the soundness of the opinion and judgment rendered in Department.

To the contention, for the first time advanced in the petition for a rehearing, that Stein should be compelled to pay interest from the date of his tender, a complete answer is found in *Ferrea* v. *Tubbs,* 125 Cal. 687, [58 Pac. 308], and *Wadleigh* v. *Phelps,* 149 Cal. 642, [87 Pac. 93].

For the reasons given in the Department opinion, hereto appended, the judgment and order are affirmed.

"Shaw, J.: This is an appeal from the judgment and from an order denying defendant's motion for a new trial.

"The cause was heretofore considered by this court upon an appeal by the defendant from a judgment given upon a previous trial and from an order denying defendant's motion for a new trial. The judgment and order then appealed from were reversed. (*Stein* v. *Archibald,* 151 Cal. 220, [90 Pac. 536].) After the first trial J. F. Archibald, the original defendant, died and the present defendant, as administratrix of his estate, was substituted. The effect of the reversal was that the cause was remanded to the lower court for a new trial of all the issues made by the pleadings. There is no force in defendant's contention that the decision of that appeal by this court required the lower court, upon the going down of the *remittitur,* to enter judgment for the defendant without trial, and no merit in the motion of defendant to enter such judgment. (*Davis* v. *LeMesnager,* 155 Cal. 520, [101 Pac. 910].) Upon the new trial which took place judgment was again given for plaintiff.

"The action was to compel specific performance of an alleged agreement to sell and convey real estate, and for an accounting of the income therefrom. The agreement is set forth in the opinion upon the former appeal and it is not necessary to repeat it in full. It covered 9,680 acres of land. Its date was October 9, 1897. By its terms Archibald agreed to sell to Stein, 'an undivided one-half interest' in the tract, at any time within three years from its date, if, within that time, Stein should pay him '$4 per acre for the undivided one half of all of said described land.' The time was afterwards extended to October 9, 1902. Upon the first trial the lower court construed the above quoted language to mean that Stein was to pay only at the rate of $2 for the entire area of land, which it then found to be only 9,640 acres. It adjudged performance by Archibald upon payment to him of $19,280. The only point decided by this court, upon the appeal from that judgment, was that this interpretation was erroneous and that Stein was bound to pay, in performance of the contract, at the rate of $4 per acre for the entire area, for an undivided one-half interest therein.

"Before beginning the action Stein made a written offer of performance, following therein the exact language of the

agreement with respect to the price, but not stating the sum total. It stated 'You will please take notice that I am now able, ready and willing and hereby offer to pay you the sum of $4 per acre for an undivided one half of all those certain lands,' describing them, upon the execution of a deed thereof, and it demanded a conveyance of said interest in said lands. The complaint, in substantially the same language, averred the making of the offer and the ability and readiness of plaintiff to pay upon the making of the proper deed. It did not allege the total sum or otherwise state the price of the land. The answer denied that the plaintiff had at any time offered to pay $4 per acre, or any other sum, for a conveyance of the land, or that plaintiff was able or ready to pay said sum, or any sum for such conveyance. Upon the first trial, the amount of money called for by the contract and covered by the offer was not mentioned or discussed. The written offer was produced as evidence and the plaintiff then in open court declared that he offered to 'pay to the defendant the sum of $4 per acre for an undivided one half of the land,' and to bring the money into court; but no computation of the amount was made or demanded, nor was anything said to indicate whether plaintiff thereby intended to offer to pay $4 per acre for half the area, or $4 per acre for the entire area. The only place in the record of that trial in which the total price of the land appears to have been mentioned or considered was in the conclusions of law and judgment filed and rendered on February 8, 1905, each of which declared that the plaintiff was entitled to a deed upon payment of $19,280.

"Thereafter the plaintiff insisted that this sum was the price fixed by the contract, and in opposing the appeal he claimed the full benefit of the judgment upon that construction until it was finally reversed and the cause remanded for a new trial. Upon the last trial plaintiff again relied upon the original written offer, presenting it at that time as a sufficient tender of the entire sum of $38,720, and he then formally offered to bring that sum of money, naming it, into court. The court, upon the last trial, found that the area was 9,680 acres. The appellant claims that the plaintiff, by his conduct, while obtaining the first judgment and upon the appeal therefrom, in claiming that the agreement was an offer to

sell the undivided one half of the land for $19,360 and that the written offer was a tender of that amount, only, was estopped on the second trial, to present the offer as a tender of $38,720, or to assert that it was sufficient as an offer of performance, or as an acceptance of the option.

"In the opinion upon the former appeal it was said that the language of the option referred to the area and not to the interest, and that it called for the payment of $38,720 as the price of the undivided one-half interest to be sold. If the option had this legal effect, it necessarily follows that the several offers to perform made in the written tender, repeated in the complaint, and again stated in court, being couched in the same language, would have the same legal effect. Therefore the tender was sufficient to convert the option into an enforceable agreement to buy and sell, and the complaint stated a good cause of action for specific performance. It does not appear that the defendant, at any time prior to the conclusion of the first trial and the filing of the findings and conclusions of law, made any objection to the language of the offer, or suggested that the sum offered was less than the price agreed to, or that the offer did not specify the total amount of money offered, or that it was in any wise uncertain or ambiguous. Upon the written offer, according to its true meaning, the plaintiff was entitled to a decree of specific performance, at the time the cause was submitted upon the first trial, upon payment by him of $38,720. No demand of that sum, or offer to accept it, had been made by the defendant to put the plaintiff in default, and the plaintiff's offer, by its legal effect, was a good offer of performance for that amount. The plaintiff did not succeed in maintaining the judgment declaring him entitled to receive a conveyance upon the payment of half that sum. He failed in that contention and he gained nothing thereby. Neither did the defendant lose anything by reason thereof. His position was not changed for the worse by the erroneous judgment or by the unsuccessful effort of plaintiff to maintain the same upon the appeal. It is true that he incurred costs in prosecuting that appeal, but that outlay was recovered by the judgment. Defendant had the right, at any time before or after that decision, to offer a deed and demand the full sum of $38,720 as a condition of its delivery, and if, upon such demand,

the plaintiff had failed to pay, he would have been in default and the contract would have been at an end thenceforth. Defendant did not see fit to make any such offer or demand. His situation is substantially the same now as it was prior to the first judgment.

"The case lacks some of the essential elements of an estoppel. An equitable estoppel is not raised by the conduct of one party in the course of a lawsuit, unless, by reason thereof, the other party has done some act or has been placed in a position that would render it unjust to him to allow the first party to change his own position in regard to the matter. Speaking of estoppels in the course of proceedings in court, Mr. Bigelow says: 'Where, then, no wrong would be done to the court or to the other parties to a cause by permitting a change of position, a change should in principle and will in fact be allowed.' (Bigelow on Estoppel, 723.) A party suing upon a contract has a right to claim a construction thereof more favorable to him than it will bear and ask for a larger judgment than he is entitled to, and if he is refused such relief before the cause is determined and the other party will not be prejudiced by a change of plaintiff's claim, plaintiff will still be at liberty to contend for that which is his lawful right. In order to constitute an estoppel, the condition brought about by the conduct of the party to be estopped must be such that the other party will be injured or placed in a worse position if the first party is allowed to pursue another course or assert the fact to be contrary to his first statement, and the party claiming the estoppel must himself have been ignorant of the truth of the matter, or of the extent of his rights concerning the same. (*Boggs* v. *Merced M. Co.,* 14 Cal. 368; *Davis* v. *Davis,* 26 Cal. 40, [85 Am. Dec. 157]; *Dean* v. *Parker,* 88 Cal. 287, [26 Pac. 91].) These elements of estoppel, as we have seen, did not exist. The defendant may still preserve the rights he has under the contract, notwithstanding the unfounded claim of the plaintiff as to the price. The defendant was not at any time during the litigation ignorant of the terms of the contract, or of his rights under it. He was, in fact, insisting that the option had expired, and was unwilling to sell at the price he agreed to take by the terms of the option—namely, $38,720. We hold that the plaintiff is not estopped to insist now that his offer

of performance was an offer to pay the true amount fixed by
the contract as construed upon the former appeal.

"The appellant further contends that the written offer was
insufficient because it was not made to Archibald in person.
Stein resided at Stockton. Archibald resided near Madera on
the land. On September 20, 1902, Stein sent a letter by reg-
istered mail addressed to Archibald at Madera, which was
his post-office address, stating therein his intention to settle
with Archibald, and close the deal. Archibald was in Madera
on that day, and again on September·25th. The letter was
delivered to his sister, on September 24th, and Archibald did
not receive it until October 13th. About the first of October,
Archibald left his house in a wagon and traveled to Alameda
County, and from thence to Santa Cruz and Watsonville,
staying but a short time in one place, and remained away
from Madera until October 13th. This and other evidence,
which we need not state in detail, shows clearly that he was
endeavoring to evade the making of any offer by Stein. On
the 6th of October, 1902, Stein went to Madera and made
fruitless inquiries there for Archibald. From thence he went
to Archibald's residence and inquired of his sister as to his
whereabouts, and was informed that he was away from his
home and that she did not know where he was. Thereupon,
at Archibald's said residence, Stein delivered to her for
Archibald the written tender in question. He also deposited
a copy thereof in the post-office at Madera, addressed to
Archibald. The action was begun on October 8, 1902. These
facts we think are sufficient to show that the tender was
properly made. 'An offer of performance must be made to
the creditor . . ., if such creditor . . . is present at the place
where the offer may be made; and if not, wherever the cred-
itor may be found.' (Civ. Code, sec. 1488.) If this were the
only provision of law upon the subject, the tender might be
insufficient, but section 1489 of the Civil Code is as follows.

" 'In the absence of an express provision to the contrary
an offer of performance may be made, at the option of the
debtor:

" '1. At any place appointed by the creditor; or,

" '2. Wherever the person to whom the offer ought to be
made can be found; or,

" '3. If such person cannot, with reasonable diligence, be

found within this state, and within a reasonable distance from his residence or place of business, or if he evades the debtor, then at his residence or place of business, if the same can, with reasonable diligence, be found within the state; or,

" '4. If this cannot be done, then at any place within the state.'

"It appears from this provision that where the seller of land evades the buyer for the purpose of preventing a due offer of performance, the offer may be made at his place of residence. As we have said, the evidence shows that Archibald absented himself in order to evade the making of such offer. In that event it could have been made at his residence, and as it was made at that place on the 6th of October, 1902, two days before the suit was begun, the tender was complete.

"Appellant also claims that the agreement is merely an option and that it was without any consideration. This contention cannot be maintained. It is true that the agreement was a mere option, but a sufficient consideration therefor appears from the terms of the instrument itself. It recites that 'Such party of the first part, in consideration of the agreements hereinafter expressed, to be performed by the party of the second part,' (Stein), agrees to sell and convey the land, within three years. Another clause in the agreement provides that, during the terms of years therein specified, Stein would bear equally with Archibald all the expenses incurred in farming the land, and that Stein was to have one half of the gross income arising therefrom. This agreement of Stein to assist in the farming operation was a sufficient consideration for the option. It was further contended that the two years' extension of the term of the agreement was without consideration. This claim also is without foundation. There is evidence to show that Stein and Archibald had farmed the land together for the first two years of the term of the contract, that Stein had paid out about five thousand dollars to assist therein, that Archibald had received and retained all the income therefrom, and that the account of these transactions required a settlement before it could be ascertained how much Stein should pay if he desired to purchase the land. The original contract expired on October 9, 1900. On that day Stein told Archibald that he was ready to settle the account and find out what was owing and wanted

to pay him whatever was due and receive a deed for half the land. Archibald then said he was not ready to make a settlement but would try to get up the account as soon as possible, and upon Stein's objection that the contract was about to expire, Archibald said that he would renew it, and thereupon he executed a written contract extending the time for two years. Any benefit received by the maker of a promise to which he is not lawfully entitled, is a sufficient consideration for its execution. (Civ. Code, sec. 1605.) Archibald by this promise obtained an extension of the time within which to get his account ready. The benefit may have been trifling, but he was not otherwise lawfully entitled to it and it was sufficient to sustain the contract, as a matter of law. (*Smith v. Bangham*, 156 Cal. 364, [28 L. R. A. (N. S.) 522, 104 Pac. 689].)

"These comprise all the points which we deem it necessary to discuss."

Beatty, C. J., does not participate in the foregoing decision.