[Civ. No. 4384.   Second Appellate District, Division Two.—April 29,
1925.]

## GEORGE B. RILEY et al., Appellants, v. C. M. BROWN, Respondent.

[1] PARTNERSHIP—BOOKS OF ACCOUNT—CORRECTNESS OF—PRESUMPTION.
The presumption of correctness which, as between the partners, at-
taches to entries in partnership books to which all of the partners
have access, does not attach to entries in the private books of one
of the partners.   Entries in other than partnership books to which
all the partners have access must be established by extrinsic proof.

[2] ID.—ACCOUNTING—PARTNERSHIP ACCOUNTS IN PRIVATE BOOKS—
STIPULATION PROVIDING FOR AUDIT—ORDER OF REFERENCE.—In an
action for dissolution of partnership and an accounting, where the
defendant kept no book exclusively containing the accounts of the
partnership, but kept several sets of books relating to other enter-
prises in which he was interested, which sets contained items and
accounts relating to his partnership with plaintiffs, the latter will
not be heard to complain that the trial court erred in ordering,
after the referee appointed by the court had made an audit of one
of the books and made its report, a further reference for the pur-
pose of auditing the remaining sets of books and making a supple-
mental report, where the order of the court was based on a stipu-
lation of the parties which was so broad in its terms that it
included all account-books kept by the defendant, and expressly
dispensed with extrinsic proof as to all items shown by such books,
excepting only such items as might be specifically objected to by
one of the parties.

[3] ID.—DISBURSEMENTS MADE AFTER EXPIRATION OF PARTNERSHIP—
RIGHT OF LIQUIDATING PARTNER TO CREDIT FOR.—In such action, the
fact that the supplemental report made by the referee showed items
in defendant's favor which were records of disbursements made by
him after the expiration of the term during which the partnership
was to continue and after the action was commenced, did not render
the report objectionable, where the defendant acted as the liqui-
dating partner.

[4] ID.—DISBURSEMENTS—LIQUIDATION.—In such action, defendant's
right to be credited with every item of disbursement made by him
from his own personal funds while engaged in liquidating the
affairs of the copartnership was as unimpeachable as was his
liability to be charged with all collections made by him on behalf
of the firm during that period.

[5] ID.—PRIVATE BOOKS—STIPULATION—EVIDENCE.—Though a liqui-
dating partner is entitled to be credited with all disbursements

made by him during the period of liquidation, entries of such disbursements in books kept by him in his possession and under his sole control, and to which his partners have no access, are not, as a general rule, admissible in his favor as against his copartners; but where the parties have expressly stipulated to refer all books kept by the liquidating partner to an accountant to take an account therefrom it does not lie in the mouth of either party thereafter to object to the use of such books as evidence.

[6] ID.—RENDITION OF STATEMENTS—ESTOPPEL.—In such action, the fact that defendant rendered plaintiff two statements showing a greater sum of money to be due plaintiffs than is shown on the supplemental report did not estop defendant from claiming credit for any item shown by such supplemental report, where the statements were prepared during the period when defendant was engaged in liquidating the partnership affairs, and neither one was intended to show a final balance reached upon consideration of all of the partnership affairs, and plaintiffs never acted upon either statement, nor did they change their position by reason thereof.

[7] ID. — QUASI-ESTOPPEL — ESSENTIALS. — To constitute a "quasi-estoppel" it is essential that the party invoking it shall have been misled by the prior conduct or the prior inconsistent claim of the other party; also that he shall have changed his position in reliance thereon.

---

(1) 22 C. J., p. 107, n. 69 New; 30 Cyc., p. 743, n. 23, 28.   (2) 4 C. J., p. 720, n. 49 New; 30 Cyc., p. 739, n. 92 New; 36 Cyc., p. 1291, n. 65.   (3) 30 Cyc., p. 742, n. 11.   (4) 30 Cyc., p. 742, n. 11.   (5) 30 Cyc., p. 736, n. 72; 36 Cyc., p. 1292, n. 69.   (6) 21 C. J., p. 1206, n. 35.   (7) 21 C. J., p. 1202, n. 19, p. 1205, n. 28, 29, 31, 32.

APPEAL from a judgment of the Superior Court of San Bernardino County. Rex B. Goodcell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Duke Stone and Harry C. Wesley for Appellants.

Leonard, Surr & Hellyer for Respondent.

FINLAYSON, P. J.—This is an action for the dissolution of a partnership and for an accounting of its affairs. Plaintiffs, at the times herein mentioned, were copartners doing business in the state of Ohio under the firm name of Armacost, Riley & Company. Defendant was engaged in business at the city of Redlands, in this state, where he

maintained an office. Some time prior to July 1, 1917, plaintiffs and defendant formed a partnership for the growing, packing, and marketing of cantaloupes during the 1917 season. The cantaloupes were to be grown in the Imperial Valley. It was for the purpose of securing a dissolution of their partnership and an accounting of its affairs that the action was brought. The appeal is by the plaintiffs, who claim that the judgment awards them a smaller sum than is due them.

The trial court found that the partnership for the growing, packing, and marketing of the cantaloupes was entered into by plaintiffs on the one side, and as one of the parties thereto, and by defendant on the other side, and as the other party thereto; that under their agreement plaintiffs, as one party, were equal partners with defendant, as the other party; that the profits and losses were to be shared and borne equally by and between the two parties; that plaintiffs, as the one party, and defendant, as the other, were to furnish an equal amount of capital; that the business of the partnership was to be conducted by defendant, and that it was to be under his direction and control. An accounting was had during the course of the trial, as the result of which the court further found that plaintiffs are entitled to be paid by defendant the sum of $107.58. A final judgment was entered accordingly on January 11, 1922, decreeing a dissolution of the copartnership as of December 24, 1921, and adjudging that plaintiffs recover from defendant the above-mentioned sum. Appealing from that judgment, plaintiffs claim that the trial court committed error in taking the account, and that but for such error a much greater sum would have been found to be due them.

The precise nature of the partnership agreement and of the respective rights and obligations of the parties thereunder could be determined only from a consideration of a mass of correspondence passing between plaintiffs and defendant over a considerable period of time. Following the introduction of this correspondence, and after the learned trial judge had announced from the bench that he would find the partnership agreement to be as above stated, an informal conversation ensued between court and counsel relative to the accounting which the parties desired should then be taken in order to determine the balance, if any, which might be

due from one party to the other. This colloquy resulted in a stipulation in open court whereby it was expressly agreed by plaintiffs and defendant "that a reference of the accounts involved in this action may be made to the firm of R. E. Parr and Company, certified accountants, with directions to ascertain *from the books and accounts of the defendant* [italics ours] the amount and date and source of receipt and the individual items of disbursements, and what the same were for, and to whom paid, making a report in detail to the court, furnishing one copy thereof to plaintiffs and one copy thereof to defendant, reserving to either party the right to object to the allowance of any item as a matter of law." Thereupon the court made an order in accordance with the terms of this stipulation, referring the accounts to R. E. Parr & Co. to ascertain "from the books and accounts of the defendant" the items of receipts and disbursements, and ordering the accountants to make a detailed report to the court, reserving to either party when the matter should come before the court the right to object to the allowance of any item as a matter of law. As a part of this order the court further directed that "all books or original entry, and all books, documents, checks, papers or memoranda whatsoever, pertinent to the transaction or the partnership business between plaintiffs and defendant, *now in the possession or control of the defendant* [italics ours], be furnished to the referee for the purpose of this reference." Defendant, who was interested in a number of business ventures in California, personally attended to all of the partnership affairs in this state. Subsequently to the formation of this partnership with plaintiffs he entered into a partnership with a man of the name of Ford, who advanced for defendant some of the moneys which the latter put into the business of his partnership with plaintiffs. No set of books was ever opened which related exclusively to the transactions in which the partnership between plaintiffs and defendant was interested. Instead, defendant opened and kept, at his office in Redlands, a set of books in the name of "Brown & Ford," which, in addition to entries of the transactions of the partnership between himself and Ford, also contained the principal items pertaining to the business of defendant's partnership with plaintiffs. These books, however, did not contain entries of all of the transactions

growing out of defendant's partnership with plaintiffs. Though counsel for appellants are pleased to refer to these books as the "partnership books," they were not partnership books in any true sense of the term. That is, they were not books pertaining exclusively to the business of the partnership between plaintiffs and defendant, nor was any set of books ever opened which contained only items relating to defendant's partnership with plaintiffs.

In addition to the books kept by defendant in the name of Brown & Ford, there was also a set of books kept by him in the name of "Gold Banner Association"—a corporation with which defendant was connected. Some of the items pertaining to the business of the partnership between plaintiffs and defendant were entered in each of the two last-mentioned sets of books, and did not appear in the books kept in the name of Brown & Ford. The sums advanced by plaintiffs, and by Ford on behalf of defendant, and which were to meet the expenses of growing, packing and marketing the cantaloupes, were entered in the Brown & Ford books; but of those sums which defendant disbursed from his own moneys in the business of his partnership with plaintiffs, some were entered in the books which he kept in the name of C. M. Brown, agent, and some in those which he kept in the name of the Gold Banner Association.

Following the court's order of reference, the accountants made an audit of the books which defendant kept in the name of Brown & Ford—the books which counsel for appellants have termed the "partnership books." No audit was at that time made by the accountants of the other books kept by defendant, notwithstanding these other books showed the disbursements made by defendant from his own moneys in his conduct of the partnership business. Having made this partial audit, the accountants filed their report with the court, showing a balance due from defendant to plaintiffs considerably in excess of the sum which the court found to be the amount due plaintiffs. After the filing of this report the trial was resumed, it having previously been continued to enable the accountants to audit the books and to make their report. On resuming the trial and upon learning that the accountants had audited only the Brown & Ford books, the court made an order, over plaintiffs' objection, re-referring the matter, with directions to the account-

ants to comply with the original order of reference. Pursuant to this order of re-reference the accountants audited the books which defendant kept in the name of "C. M. Brown, Agent," and likewise those which he kept in the name of the "Gold Banner Association." Later a report (hereafter referred to as the supplemental report) was made to the court by the accountants showing the result of the audit made by them on this re-reference. Thereafter the trial again was resumed, and plaintiffs' counsel specifically objected to certain items shown on the original report and likewise to certain items shown on the supplemental report. Thereupon defendant introduced evidence showing the propriety of the items thus objected to and that they should be allowed. On the two reports of the accountants and on the evidence adduced by defendant to support the items specifically objected to by plaintiffs, the court found that the amount due from defendant to plaintiffs was that which we have already stated—$107.58.

Prior to the commencement of the action, namely, on August 20, 1917, defendant rendered a statement to plaintiffs which showed that at that date there was due to the latter, as a result of the partnership venture, a balance of $1,104.28. Defendant testified that at that date it was not possible to render a complete statement, and that the one rendered by him gave only an approximate statement of the condition of the partnership affairs at that time. Again, on July 13, 1918, which was prior to the commencement of the action, defendant rendered another statement to plaintiffs, showing that at that date the balance due the latter was $4,555.72. Defendant testified that this statement was prepared by his bookkeeper, and he pointed out what he claimed were manifest errors appearing on the face of the statement and which improperly augmented the true balance due plaintiffs.

Appellants earnestly contend that the court erred in ordering the re-reference, in receiving the supplemental report in evidence and in considering the items shown thereon. This objection is based upon the theory that the original report, showing, as it does, the result of an audit of the Brown & Ford books, is the only report which is founded upon an audit of the "partnership books," and that, therefore, no item shown on the books kept in the name of "C. M. Brown,

agent," or in the name of "Gold Banner Association" should
be considered.

[1] Unquestionably it is true, as appellants claim, that
the presumption of correctness which, as between the part-
ners, attaches to entries in partnership books to which all
of the partners have access, does not attach to entries in
the private books of one of the partners. Entries in other
than partnership books to which all the partners have
access must be established by extrinsic proof. (*Wheatley* v.
*Wheeler,* 34 Md. 62; *Adams* v. *Funk,* 53 Ill. 219.) [2]
But in this case we are confronted with a stipulation the
terms of which are so broad that it includes all account-
books kept by respondent, and it expressly dispenses with
extrinsic proof as to all items shown by such books, ex-
cepting only such items as might be specifically objected to by
one of the parties. Indeed, in the instant case there were no
partnership books. The books of the firm of Brown & Ford
were not the books of the partnership between appellants and
respondent. At any rate, they were no more the books of
that partnership than were the books kept by defendant in
the name of "C. M. Brown, agent" and "Gold Banner As-
sociation." The entries which related to the affairs of the
partnership between appellants and respondent were scat-
tered through these three different sets of books, and were
there interspersed with numerous other items relating to
the different enterprises in which respondent was interested.
This situation evidently was recognized by court and counsel
when the stipulation was made, for when that arrangement
was entered into it was expressly agreed, not that an audit
should be made of the "partnership books"—there were none
—but that the accountants should "ascertain from the books
and accounts *of the defendant*" the partnership receipts and
disbursements. And in the original order of reference,
which was based upon this stipulation, it was ordered that
"*all* books of original entry, and *all* books, documents,
checks, papers or memoranda whatsoever, pertinent to the
transaction of the partnership business between plaintiffs
and defendant, *now in the possession or control of the de-
fendant,* be furnished to the referee for the purpose of this
reference." The terms of the stipulation and of the order
were broad enough to include, as it doubtless was intended
that they should include, all of the several sets of books

from which the supplemental report was made. It is now too late for appellants to escape the consequences of a stipulation to which they thus solemnly committed themselves.

To protect the parties from any implication that the report of the accountants might be accepted as conclusive evidence of the correctness of the items shown therein, the stipulation included a provision to the effect that there was reserved to either party, when the report should be made and filed, "the right to object to the allowance of any item as a matter of law." From the remarks made by the court and by counsel at the time when the stipulation was being entered into, it is evident that the right thus reserved to object to the allowance of any items "as a matter of law" was understood to mean the right to object to any item which the objecting party for any reason might deem to be an improper credit or an improper charge. Immediately preceding the definite formulation of the stipulation counsel for appellants employed this language: "All we want is what the books show, saving our right to object to items which we do not think are proper charges"; and the court, when framing the stipulation and proposing it to counsel for their acceptance or rejection, said: "If the books show an item that you think is not a proper charge, you have a right to object to it; and Mr. Brown will deliver everything he has in the shape of books of account." The net result of all that was said by court and counsel at the time when the stipulation was being framed is, therefore, substantially this: The accountants to whom the matter was to be referred were to audit all the books and documents in respondent's office or under his control, relating to the partnership's affairs, and were to make a report thereon; and all items shown on such report were to be deemed to be correct and were to be admitted by the parties, save alone such as might be specifically objected to as improper charges. This was the course which was pursued, and properly pursued, by the learned trial judge throughout the trial after the parties had entered into the stipulation. Pursuant to this understanding, appellants did specifically object to a few of the items shown on the two reports, upon the ground that those particular items were not proper charges against them; and thereupon respondent introduced extrinsic evi-

dence to sustain each and every item to which objection was thus made.

[3] The next ground of assault upon the supplemental report is that it shows items in respondent's favor which were records of disbursements made by him after the expiration of the term during which the partnership was to continue and after this action was commenced. There is no merit in this contention. Respondent acted as the liquidating partner. After the expiration of the cantaloupe season of 1917—the season during which the partnership was to continue—respondent was engaged, over a considerable period of time, in winding up the affairs of the partnership business. [4] Without doubt, his right to be credited with every item of disbursement made by him from his own personal funds while thus engaged in liquidating the affairs of the copartnership is as unimpeachable as is his liability to be charged with all collections made by him on behalf of the firm during that period. [5] But though a liquidating partner is entitled to be credited with all disbursements made by him during the period of liquidation, entries of such disbursements in books kept by him in his possession and under his sole control, and to which his partners have no access, are not, as a general rule, admissible in his favor as against his copartners. (52 L. R. A., p. 846, note to *Chick* v. *Robinson.*) Where, however, as in the instant case, the parties have expressly stipulated to refer all books kept by the liquidating partner to an accountant to take an account therefrom, it does not lie in the mouth of either party thereafter to object to the use of such books as evidence. (*Cameron* v. *Watson*, 10 Rich. Eq. (S. C.) 64.)

[6] As a further ground of objection to the supplemental report it is urged that respondent is estopped to claim credit for any item shown thereon for the reason that each of the statements rendered by him on August 20, 1917, and on July 13, 1918, shows a greater sum of money to be due to appellants than is shown on the supplemental report. The circumstances testified to by respondent support the conclusion that neither of these statements was rendered or accepted as a final settlement and agreement fully settling the right of the parties. Neither statement was intended to show a final balance reached upon consideration of all of the partnership affairs. Prepared, as they were, during the

o

period when respondent was engaged in liquidating these affairs, the statements necessarily were intended to show only a partial or approximate settlement. Indeed, it is often, if not generally, the case that a statement rendered by one partner to another, prior to the complete liquidation of the partnership affairs, is rendered and received merely as a tentative basis for the subsequent ascertainment of the proper balance to be struck. In this respect an account rendered by one partner to his copartner stands upon a different basis from an account rendered between a debtor and his creditor. The inherent difference between the two situations and the reason therefor is clearly pointed out in *Hughes* v. *Smither*, 23 App. Div. 590 [49 N. Y. Supp. 115] (affirmed without opinion in 163 N. Y. 553 [57 N. E. 1112]), where the court says: "The doctrine, as between debtor and creditor, of an implied promise resulting from the preparation and rendition of an account by one party which is received and retained by the other in silence, cannot reasonably be applied to a partnership account. In the one case the account is rendered for the specific purpose of informing the debtor of the creditor's demand, and of obtaining payment. It is expected that such an account will, with reasonable promptitude, be scanned, and either paid, if found to be accurate, or disputed, if found to be inaccurate. . . . An entirely different attitude is assumed with regard to a partnership account. That is simply one partner's summary of the partnership dealings, and his version of the partnership status. The receipt of such an account suggests no immediate demand. The implication is that it is offered merely as a basis for subsequent liquidation. *It has no element of finality.* [Italics ours.] It leaves the person who receives it entirely free to seek further information before questioning his partner's figures. Both parties naturally understand that the account as rendered is tentative, and is but the first step in the direction of an accounting. Before there is a final settlement, they must go over their partnership affairs, arrive at a mutual understanding with regard thereto, and reach an agreement as to the proper balance to be struck."

It has been said by our supreme court that a party is not precluded from asserting a claim merely because it is in-

consistent with some claim previously advanced by him. (*Lackmann* v. *Kearney,* 142 Cal. 115 [75 Pac. 668]. See, also, *Pearson* v. *Hendrick,* 13 Cal. App. 732 [110 Pac. 586]; *Frank* v. *Crescent Wharf etc. Co.,* 50 Cal. App. 276 [195 Pac. 79].) The principle which underlies this pronouncement governs here, unless there be some special reason why the doctrine of estoppel should be applicable to the facts of this case. Manifestly, in order to sustain appellant's claim that respondent is estopped it must appear that each and every essential element of estoppel is present in the case. The estoppel which appellants invoke is of the kind commonly known as "*quasi*-estoppel." (21 C. J., p. 1202.) [7] To constitute such estoppel it is essential that the party invoking it shall have been misled by the prior conduct or the prior inconsistent claim of the other party; also that he shall have changed his position in reliance thereon (*Muller* v. *Mayor,* 63 N. Y. 353); and that either he shall have been prejudiced or the other party shall have been benefited by such conduct or inconsistent claim. (21 C. J., p. 1205; *Stein* v. *Leeman,* 161 Cal. 502 [119 Pac. 663].) As was tersely said by the learned author of the opinion in *Allen* v. *Hance,* 161 Cal. 196 [118 Pac. 529]: "Whatever may have worked the estoppel, whether the estoppel rests in judgment, deed, contract or *in pais,* in its essence it amounts to but this, that a man is forbidden to show the existence of a fact because by his past conduct, his declarations, his agreement, his deed or a judgment it would work an injustice and an injury to his adversary to permit him to do so." The appellants in this case were not misled to their prejudice or to respondent's benefit by anything contained in either of the statements. Indeed, appellants were not misled at all; for they never acted upon either statement, nor did they change their position by reason thereof. On the contrary, they brought this action praying for an accounting by the court of all the affairs of the partnership and for a recovery of such sum as that accounting might show to be due them. To attain the purpose of their suit they expressly stipulated, in substance and effect, that accountants to be appointed by the court should "ascertain from the books and accounts of the defendant" all of the items necessary to enable the court to strike a correct balance—irrespective of what might

be disclosed by either of the statements previously received by them.

The judgment is affirmed.

Works, J., and Craig, J., concurred.