[Civ. No. 3814. Third Appellate District.—September 25, 1929.]

L. RUSCONI, Appellant, v. CALIFORNIA FRUIT EX-
CHANGE (a Corporation), Respondent.

Everts, Ewing, Wild & Everts and Butler, Van Dyke & Desmond for Appellant.

Dozier, Kimball & Dozier and Dozier & Kimball for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment in an action upon a fruit marketing contract to recover money alleged to have been wrongfully withheld by the respondent.

The respondent is a produce marketing corporation. June 1, 1917, the parties to this action executed a written contract by the terms of which the respondent agreed to promptly sell and market, as appellant's agent, all his deciduous fruit which was to be delivered during a series of years, for a consideration expressed as follows: "for which [service] the Exchange shall deduct from the growers' account sales 7% of the gross receipts in full compensation for such services. . . . Growers are entitled to any dividend in accordance with the last paragraph of Article XIX of the by-laws, . . . having carried out the provisions contained in the paragraph of Article XIX. . . . This agreement covers 65% of the shipping grapes of party of the first part."

Article XIX of the by-laws, which is referred to in the foregoing contract, is set out at length in the complaint. The answer denies that said article, as alleged in the complaint, was in force at the time of the execution of the contract, and, upon the contrary, asserts that the article was subsequently amended and sets out the amended article as it was adopted.

During the seasons of 1917 to 1923, inclusive, the appellant delivered grapes to the respondent for marketing pursuant to said agreement. It was stipulated that the proportion of the proceeds from the sales of appellant's grapes which were delivered in 1917, which funds were reserved, and to which appellant would be entitled under his contract as a refund when the obligation matured and became due in 1922, was the sum of $1342.27; that in the event appellant had fulfilled his agreement to deliver to the respondent sixty-five per cent of his shipping grapes for the year 1923, he would have been entitled to a refund of $3,045.79 when that fund matured at a later date; that not more than thirty-

five per cent of appellant's grape crop for the year 1923 was delivered to respondent.

The complaint contains two counts, the first of which demanded the refunding of said sum of $1342.27, which the respondent claims was fully paid. The second cause of action demanded the refunding of said sum of $3,045.79, which the respondent denied was due the appellant for the reason that this refund obligation was conditioned upon the grower delivering to the respondent at least sixty-five per cent of his crop of 1923, which he failed to do. The court adopted findings in favor of the respondent, granting a nonsuit as to the second cause of action, and rendering judgment against the appellant on both counts. From this judgment an appeal was perfected.

The appellant contends that the findings and judgment are not supported by the evidence as to the first cause of action, and that the repayment of the claim demanded in the second count was not dependent upon an alleged condition precedent to the effect that the appellant was required to deliver sixty-five per cent of his annual crop to the respondent.

 Addressing ourselves to the first count, we find the record discloses a conflict of evidence regarding the circumstances under which the payment of $1320.82 was made. The appellant admitted that sum was paid to him on February 28, 1918, but asserts that it was paid to him only in settlement of a claim for a special eastern shipment of Tokay grapes which were delivered in 1917, concerning which there was a dispute. The respondent admitted that a dispute occurred over this particular shipment of grapes, but claims that the payment of $1320.82, which was made February 28, 1918, was the result of a compromise of that claim and was made solely in consideration of appellant's having waived his claim to a rebate of $1342.27, to which he would have been entitled when it matured in 1922. The appellant admits receiving the sum of $1320.82, but denies that he accepted it subject to the conditions related by the respondent, and upon the contrary asserts that since he would have been entitled unconditionally to this rebate at its maturity, the alleged compromise of that claim was without consideration. Mr. Nagle, the general manager of the respondent corporation, testified with respect to this settlement: "The

board of directors . . . ordered distribution of a portion of those earnings to all shippers who had shipped consistently with the Exchange during that year [of 1917]. . . . The earnings of that year were 4% upon the gross sales, of which 1% was ordered distributed to those entitled to it in January of the year following. In the winter of that year another 1% was ordered distributed, and the remaining 2%, under our by-laws was placed in a withholding fund, and was held for five years. Q. I take it therefore that the last payment for business transacted during the year 1917 would have been payable in 1922. A. In 1922. . . . Q. This contract, . . . with which we are today concerned calls for payment by Mr. Rusconi to your company, of 7% of the total volume, or gross business, is that correct? ·A. That is correct. . . . Q. Out of that 7% which is paid, 4% is returned to the grower, isn't that true? A. Yes, but the earnings of 4% would be distributed as I have described, according to the by-laws over a period of five years. . . . The company would . . . retain approximately 3% . . . as its operating cost. . . . Q. Will you state what the settlement was, the $1320.82 that was paid? A. That represented . . . the last of the fifth year's 1917 holding refunds of that year.'' Regarding a special shipment of grapes, which is the subject involved in the first cause of action and which shipment was furnished by appellant in 1917 and was rejected by the consignee requiring the necessity of selling it at auction at a substantial loss, Mr. Nagle further testified: ''We did not consider we were at fault at all, neither did he consider he was at fault, but there was a misunderstanding regarding whether they were juice grapes or table grapes. . . . The only time I came into the play was to settle Mr. Rusconi's account, and that he agreed to do when I gave him my check. . . . Mr. Rusconi said his loss was in the neighborhood of $1500; I figured that the refund was about $1320. . . . We adjusted the loss by giving him this fifth year refund. . . . He agreed to it—he didn't have to wait five years. . . . That was the consideration. Q. That he would take the money that would be coming to him in five years later, and waive the loss? A. Yes, sir.'' The appellant denied that this was the understanding upon which he accepted the respondent's check for $1320.82. The court, however, found the facts in accordance with the foregoing

evidence. This conflict must be resolved in favor of the judgment in that regard.

■ Appellant contends that since he was entitled to the rebate fund, the compromise was without consideration. This contention, however, may not be sustained under the circumstances of this case. It is conceded the appellant would have been entitled to the payment of his proportion of the rebate fund in the amount which he received. But he was not entitled to that refund for about four years. Respondent's waiving its right to hold and enjoy the use of this sum of money for that period of time and consenting to pay it forthwith, constituted a sufficient consideration for the compromise agreement which resulted in the settlement of their dispute. In 6 R. C. L. 654, section 67, it is said: "A long series of decisions has established the rule that a benefit to the promisor, or a detriment to the promisee is a sufficient consideration for a contract." (Sec. 1605, Civ. Code; 6 Cal. Jur. 168, sec. 117; *Stein* v. *Leeman*, 161 Cal. 502, 511 [119 Pac. 663].) ■ When a good or valid consideration for an agreement exists the law will not weigh the *quantum* thereof. (*Whelan* v. *Swain*, 132 Cal. 389 [64 Pac. 560]; *Fairchild* v. *Cartwright*, 39 Cal. App. 118, 121 [178 Pac. 333].) In the absence of fraud, the inadequacy of consideration may not be considered as a means of upsetting a contract. (6 Cal. Jur. 189, sec. 128; *Smith* v. *Bangham*, 156 Cal. 359 [28 L. R. A. (N. S.) 522, 104 Pac. 689].) The immediate settlement of an obligation, the payment of which may be legally delayed for a considerable period of time, is a benefit to the claimant which constitutes a sufficient consideration for the compromise of another claim, under such circumstances as are presented in the present action.

■ The second cause of action, to which a nonsuit was granted, is based upon a claim that appellant was entitled under the by-laws of the corporation to a share of the unconsumed portion of the gross receipts from the sales of grapes of the crop of 1923. The contract provides that the respondent was entitled to "deduct from the grower's account [of] sales 7% of the gross receipts in full compensation for such services." Section 8 of this contract further provides: "In consideration of the party of the first part holding stock in the Exchange, it is hereby agreed that it shall be paid any dividend based on the gross amount real-

ized on all fruits received for marketing through the party of the first part [appellant] in the same manner as growers are entitled to any dividend in accordance with the last paragraph of article XIX of the by-laws, less any amounts that may be due to individual growers who are members of the party of the first part and who are also entitled to receive direct this dividend, having carried out the provisions contained in the paragraph of article XIX of the by-laws referring to growers' shipments." To ascertain the amount of dividends or rebates to which the grower may be entitled, and the conditions upon which the obligation depended, it was necessary to resort to article XIX of the by-laws of the corporation. Appellant relied upon this by-law and set it out at length in his complaint. The existence and language of this by-law, in the form in which it was pleaded, was specifically denied by the respondent. The form and provisions of this by-law, therefore, became a valid issue in the case. The burden was on the appellant to establish his right to recover judgment which depended upon the authorization of this by-law. Except for the testimony of Mr. Nagle, above quoted, neither party offered proof of this by-law or its provisions. Section eight of the contract above quoted provides that growers shall be "entitled to receive direct this dividend, *having carried out the provisions contained in the paragraph of article XIX of the by-laws.*" Except for the testimony of Mr. Nagle the court was not informed as to the provisions of this important by-law. The record is otherwise silent upon this subject. There is, therefore, a total absence of evidence upon this subject unless we accept the statement of Mr. Nagle, who testified as follows: "The management was then instructed to distribute those earnings [of 1923] beginning January, 1924, according to the by-laws which provided that they were to be distributed *to those who had fulfilled their contracts* and shipped consistently with the Exchange." It thus appears that only those growers who had fulfilled their contracts with the marketing corporation were entitled to participate in the unconsumed portion of the so-called withholding fund. This provision entitling growers "who had fulfilled their contracts" to participate in the reserve fund was clearly a condition precedent, which was created by the terms of the contract. "A condition precedent is one which is to be

performed before some right dependent thereon accrues, or some act dependent thereon is performed." (Sec. 1436, Civ. Code.) The right to share in this reserve fund was conditioned upon the fulfillment of the contract to deliver to the respondent sixty-five per cent of appellant's crop for 1923. Section 1439 of the Civil Code provides that "Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself." The last paragraph of the contract upon which the appellant relies provided: "This agreement covers 65% of the shipping grapes of party of the first part." It was stipulated that only thirty-five per cent of appellant's crop of grapes for 1923 was delivered. This was fatal to his right of recovery, and a nonsuit was, therefore, properly granted.

The judgment is affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 25, 1929.